Vedder Price (CA), LLP
Scott H. Olson, Bar No. 249956
solson@vedderprice.com
275 Battery Street, Suite 2464
San Francisco, California 94111
T: +1 415 749 9500
F: +1 415 749 9502

Attorneys for Creditor
GERBER FINANCE INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| In re: | Case No. 2:16-bk-25844-RK |
|---|---|
| ESSENTIAL LIVING FOODS, INC., | Chapter 11 |
| Debtor | **GERBER FINANCE INC.'S OBJECTION TO USE OF ITS CASH COLLATERAL** |
| | Date:    December 6, 2016
Time:    10:00 a.m.
Judge:   Robert N. Kwan |

Gerber Finance Inc. ("Gerber") hereby objects (the "Objection")[1] to the *Debtor's Emergency Motion for Order Authorizing Use of Cash Collateral Through December 31, 2016* (Dkt. 4, the "Cash Collateral Motion"), and respectfully represents as follows[2]:

---

[1] Capitalized terms used in this Objection and not otherwise defined herein shall have the same meaning ascribed to such terms in the Cash Collateral Motion or, as applicable, Gerber's Secured Financing Documents (defined below).

[2] As the Cash Collateral Motion is scheduled to be heard less than 14 days after the Petition Date (defined below), the Debtor seeks an interim order on the use of Gerber's cash collateral. (Cash Collateral Motion at p. 6); 11 U.S.C. § 4001(b)(2).

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

## PRELIMINARY STATEMENT

1. Gerber is the holder of a properly perfected security interest in and lien on the Debtor's assets, including the cash collateral the Debtor requests to use in its Cash Collateral Motion. As a result, Gerber's rights are directly (and negatively) impacted by the Cash Collateral Motion, pursuant to which the Debtor seeks authority to use cash collateral without offering any adequate protection to Gerber.

2. As set forth in greater detail below, the Cash Collateral Motion should be denied because the Debtor fails to present any credible evidence, whether in relation to its projected revenues, contemplated disbursements, asset valuation or potential sale.[3] In addition, the Debtor's proposed budget fails to provide any information regarding budgeted payments— including payments to insiders of the Debtor— rendering it impossible for the Court and parties in interest to ascertain the necessity and propriety of certain budgeted payments and likewise showing that the Debtor has not met its burden of proving a need to use the cash collateral. Finally, the Cash Collateral Motion should be denied because the Debtor fails to offer Gerber any adequate protection for its proposed use of the cash collateral, notwithstanding the fact that it admits that Gerber is entitled to adequate protection.

## BACKGROUND

3. On December 1, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code

---

Gerber expressly reserves the right to amend or supplement this Objection, to introduce evidence at any preliminary or final hearing with respect thereto, to conduct discovery of the Debtor and any third parties as it may deem necessary and appropriate, and to file additional and supplemental objections and pleadings as necessary.

[3] The Cash Collateral Motion relies upon the *Omnibus Declaration of Kipp Stroden in Support of "First Day" Motions* (Dkt. 6, the "Stroden Declaration") and appends a 1-page declaration of the Debtor's financial consultant (the "Hiramatsu Declaration") together with a 5-week anticipated cash flow projection (the "Proposed Budget").

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

("Bankruptcy Code"), in the above-entitled Court, commencing a case under the Bankruptcy Code (the "Bankruptcy Case"). The Debtor continues to operate as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in this Bankruptcy Case. No official committee of unsecured creditors has been formed.

### A. Gerber's Secured Financing Documents

5. Gerber is the Debtor's senior secured lender with a lien on all of the Debtor's assets. On or about June 9, 2015, Gerber and the Debtor entered into a Loan and Security Agreement pursuant to which Gerber agreed to make loans and advances to the Debtor in a maximum principal amount of $1,200,000 (as amended, modified or restated from time to time, the "Loan and Security Agreement").[4] The Loan and Security Agreement is further evidenced by the Debtor's Promissory Note dated June 9, 2015, in the principal amount of $1,200,000 in favor of Gerber (as amended, modified or restated from time to time, the "Note").[5]

6. As security for payment of the obligations under the Loan and Security Agreement and Note, the Debtor granted to Gerber continuing first priority security interests in, and liens upon, substantially all of its assets (including, without limitation, all real, personal, intellectual, tangible, intangible and/or fixture property of every kind and nature, whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest, including all of the following property in which it now has or any time in the future may acquire any right, title or interest (collectively, including Gerber's Cash

---

[4] A true and correct copy of the Loan and Security Agreement is attached as **Exhibit A** to the Declaration of William W. Thorsness (the "Thorsness Declaration"), filed contemporaneously herewith.

[5] A true and correct copy of the Note is attached as **Exhibit B** to the Thorsness Declaration filed contemporaneously herewith.

Collateral (defined below), Gerber's "Collateral")):

(a) All Accounts; all Deposit Accounts and all funds on deposit therein, all cash and cash equivalents, all commodity contracts, all investments, Stock and Investment Property, all Inventory, all Equipment, all Goods, all Chattel Paper, all Documents, all Instruments, all Books and Records, all General Intangibles, all Supporting Obligations and all Letter-of-Credit Rights;

(b) All Proceeds and products of all and any of the foregoing, but excluding in all events Hazardous Waste; and

(c) All Intellectual Property Collateral.

(Loan and Security Agreement § X.)

7. As described in the preceding paragraph, Gerber's Collateral includes, without limitation, all of the Debtor's cash collateral within the meaning of Bankruptcy Code § 363(a) (hereinafter, Gerber's "Cash Collateral").

8. As additional security for the Loan and Security Agreement and the Note, the Debtor's owner (Beon Holdings, Inc.) and Chief Executive Officer (Kipp Stroden, the same individual who filed the Stroden Declaration) executed unconditional and absolute guarantees in favor of Gerber (collectively, the "Guarantors" and, as applicable, the "Guaranties").[6]

9. Subsequent to the Loan and Security Agreement, the Debtor defaulted in its obligations to Gerber. On or about July 11, 2016, the Debtor, Guarantors and Gerber entered into that certain Forbearance Agreement (as amended, modified or restated from time to time, the "Forbearance Agreement"[7] and, together with the Loan Agreement, the Note, the Guaranties and all documents executed in connection therewith, the "Secured Financing Documents"), pursuant to which the

---

[6] True and correct copies of the Guaranties are attached as **Exhibit C** to the Thorsness Declaration filed contemporaneously herewith .

[7] A true and correct copy of the Forbearance Agreement is attached as **Exhibit D** to the Thorsness Declaration filed contemporaneously herewith.

Debtor and Guarantors, among other things, acknowledged (a) its defaults, (b) the amounts due and owing to Gerber, (c) the validity and enforceability of Gerber's first position liens on and security interests in the Collateral and (d) the absence of defenses to the collection thereof. In the Forbearance Agreement, the Debtor also fully released Gerber.

10. By virtue of the Secured Financing Documents and accompanying documents (including UCC financing statements), Gerber possesses a perfected security interest in and lien upon the Collateral.[8]

11. As of the Petition Date, the outstanding principal balance owed to Gerber under the Forbearance Agreement was no less than $1,034,375.54, plus all accrued and accruing interest, fees and late charges, as well as attorneys' fees and costs.

12. Gerber has not consented to use of the Collateral, including without limitation, Gerber's Cash Collateral.

13. Notwithstanding the Debtor's assertion in the Cash Collateral Motion that it "is in the process of investigation the extent, validity, priority and perfection of the security interests on the Secured Creditors" (Cash Collateral Motion at p. 6), none of the foregoing facts are in dispute. Indeed, the Debtor has admitted the salient features of the above facts in the Forbearance Agreement, including that the "liens and security interests created by the Loan Documents are valid and subsisting liens and security interests, and are superior to all liens and security interests, except for those exceptions permitted by Lender." (Forbearance Agreement at ¶ 5(h).)

---

[8] A true and correct copy of the UCC Financing Statement is attached as **Exhibit E** to the Thorsness Declaration filed contemporaneously herewith. The Cash Collateral Motion identifies two other parties that may claim a security interest in the Collateral (Scorpion Group, LLC and Vered Private Equity, LLC). Both of these parties executed subordination agreements in favor of Gerber prior to the Petition Date.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

**B.    The Cash Collateral Motion and the Absence of Evidence to Support it**

14.    Through the Cash Collateral Motion, the Debtor seeks entry of an order (i) authorizing the use of cash collateral pursuant to the Proposed Budget through year-end; (ii) granting Gerber a continuing security interest in all assets in which Gerber had a lien or security interest as of the Petition Date, in the same order of priority that existed as of the Petition Date and (iii) granting Gerber replacement liens against property of the same type as the Collateral acquired by the Debtor post-petition, to the extent of any reduction or diminution in the value of the Gerber's Collateral. With the exception of avoidance and related actions (the proceeds of which are not offered in the Debtor's suggested adequate protection package), the Debtor has not identified any unencumbered property.

15.    The Debtor asserts that the use of Cash Collateral is essential to operate and preserve enterprise value through at least December 31, 2016, at which point Debtor promises to have concluded a sale to an unidentified third party. The Debtor has provided no evidence of such a sale and has not filed a sale motion or related pleading to approve bidding procedures. Such a sale is dubious, to the say the least—the Debtor admits that, prior to the Petition Date, two potential sales fell through.[9] Moreover, the Cash Collateral Motion alleges the Debtor's need for Cash

---

[9] See Cash Collateral Motion at ¶ 7; *Debtor's Emergency Motion for an Order Pursuant to Sections 105 and 362 of the Bankruptcy Code: (A) Enforcing Automatic Stay as to Debtor's Accounts Receivable that Gerber Finance, Inc. Exerted Control over and Compelling Gerber to Rescind Demands on Property that is now Property of the Estate; (B) Finding Gerber in Violation of the Automatic Stay to the Extent it does not Discontinue its Control over the Debtor's Assets (C) Order Confirming Ordinary Course Business Practices and Imposition of the Automatic Stay* (the "Comfort Motion" at ¶¶ 9-11). The Debtor also admits that its financial difficulties began when an alleged predatory investor filed a state court lawsuit in 2013. Notably, this suit remains pending, despite the Debtor's statement that the plaintiff has apparently agreed to dismiss the case. (Cash Collateral Motion at ¶ 6.).

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

Collateral is necessary to support open purchase orders. However, the Debtor has failed to provide any evidence to substantiate these purchase orders and, if they exist, their payment and delivery terms.

16. Finally, the Debtor contends (without support) that Gerber is protected by a 44% equity cushion and suggests that the Collateral will not decrease in value. But for the funds currently being held by Costco, the Debtor provides no information or competent valuation evidence regarding the $679,755 of supposed accounts receivable (including whether they are even collectible) or the $1,218,480 of inventory (which is based upon "organic superfoods" that, of course, are quickly depreciating assets). Not surprisingly, the Debtor's financial consultant does not opine as to value. Gerber believes it is likely undersecured. In fact, only a few weeks prior to the Petition Date, and in response to an appraisal circulated by the Debtor's CEO, the counsel for the potential buyer stated that "[t]he valuation of the assets, as liquidated i[s] $70K+."[10]

## OBJECTION

### I. THE CASH COLLATERAL MOTION SHOULD BE DENIED BECAUSE THE DEBTOR HAS NOT OFFERED TO PROVIDE, NOR CAN IT, ADEQUATE PROTECTION TO GERBER

17. As a condition to its use of Gerber's Collateral, the Debtor must provide Gerber with adequate protection of its interest therein. 11 U.S.C. §§ 361, 363(c)(2). A debtor's right to use, sell or lease encumbered property is conditioned on its demonstrating adequate protection. 11 U.S.C. §363(e). The provision of adequate protection is mandatory. *Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 490 (Bankr. S.D.N.Y. 2002); 3 COLLIER ON BANKRUPTCY ¶ 361.02 (15th ed. ev. 2009) (An entity is entitled to adequate protection as a matter of right, not merely as a matter of

---

[10] Should the Court desire to entertain evidence on the Cash Collateral Motion, Gerber is prepared to submit the evidence for the Court's consideration.

discretion . . . when the estate proposes to use, sell or lease property in which the entity has an interest . . . this protection is provided both as a matter of policy and, arguably, as a matter of constitutional law.") The proffered protection must "insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy." *In re Worldcom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004).

18. The Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1); *In re Riverwood La Place Associates*, 1998 WL 908949, at *2 (Bankr. E.D.N.Y. 1998). The Debtor has failed to sustain that burden, as detailed above. Contrary to the Debtor's contention, the proposed adequate protection is not adequate protection of Gerber's interests for the use of Collateral, including the Cash Collateral generated therefrom. *See Travelers Ins. Co. v. River Oaks Ltd. P'ship (In re River Oaks Ltd. P'ship)*, 166 B.R. 94, 99 (E.D. Mich. 1994) ("[T]his Court cannot accept that the use of future rents to replace the expenditure of the prior months rents somehow provides adequate protection for the secured party"). The request for use of Gerber's Cash Collateral should be denied.

19. Except for the Cash Collateral, Gerber's Collateral is principally based on depreciating assets. Under these facts, Gerber would be substantially harmed if the Debtor were permitted to use Cash Collateral, including the $360,000 being held at Costco, and convert the same to perishable inventory in the speculative hopes of concluding a sale. Even if the Debtor did offer any actual adequate protection, it could not sufficiently compensate Gerber for the Debtor's contemplated use of Cash Collateral. *See, e.g., In re Bennett Funding Group, Inc.*, 255 B.R. 616, 643 (N.D.N.Y. 2000) (finding that a secured creditor has a constitutional right to have the value of its petition date claim preserved).

20. Gerber is the first position secured creditor and its interest must be adequately protected by real value; not by phantom protections and speculative wishes.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

## II. THE PROPOSED ADEQUATE PROTECTION PACKAGE DOES NOT PROVIDE ADEQUATE PROTECTION TO GERBER

21. The Debtor contemplates using Cash Collateral to pay the Debtor's expenses and to keep its businesses running through a sale. In order to allegedly protect against the diminution in value resulting from the use of Gerber's Cash Collateral, the Debtor offers illusory replacement liens. (Cash Collateral Motion at p. 12.) This is insufficient. The replacement liens are worthless because the Debtor has no unencumbered assets. Gerber already maintains a first priority lien on the Collateral, which lien continues to all post-petition estate property generated by the proceeds and products thereof. 11 U.S.C. 552(b)(1).

22. It is well settled that adequate protection cannot be provided by replacement liens on collateral already subject to a lender's prepetition lien. *See Swedeland Dev. Group, Inc. v. Resolution Trust Corp. (In re Swedeland.)*, 16 F.3d 552, 564-65 (3d Cir. 1994) ("We are at a total loss to understand how a court can suggest that a pre-petition creditor with a lien being subordinated to a superpriority lien can be thought to have adequate protection because an asset encumbered by its lien will remain so encumbered."); *In re Las Torres Dev., LLC*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) ("[I]t is disingenuous to argue that the Debtors can grant replacement liens to the Lender on [collateral] because the Lender already has a lien on [that collateral]"); *In re LTAP US, LLP*, 2011 WL 671761, *3 (Bankr. D. Del. Feb. 18, 2011) ("Providing [the lender] with a replacement lien on assets against which it already has a lien is illusory. Debtor must provide [the lender] with additional collateral, and there is none.") Beyond these illusory liens, the Debtor offers no adequate protection to Gerber. Accordingly, the Cash Collateral Motion must be denied.

## III. SPECULATIVE BENEFITS DO NOT PROVIDE ADEQUATE PROTECTION

23. The Debtor also contends that Gerber is adequately protected given

Case 2:16-bk-25844-RK    Doc 19    Filed 12/05/16    Entered 12/05/16 16:56:52    Desc
Main Document    Page 10 of 15

that the use of the Cash Collateral will preserve the Debtor's going concern value. (Cash Collateral Motion at p. 10.) While this may arguably be true in a vacuum, the fact that the Debtor recently failed to close sales to two separate buyers prior to the Petition Date, coupled with absence of evidence or motion facilitating an expedited sale now, proves that the Debtor's hope is speculative at best.

24. A finding of adequate protection requires facts or projections grounded on a firm evidentiary basis. *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) ("[T]he facts in this case do not support the proposition that a prospective increase in value of the Thornwood Property will constitute 'adequate protection' against diminution in Acquvest's interest . . . ."); *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 443 (Bankr. S.D.N.Y. 2010) (finding that "[e]ven if [the court] were persuaded by [the Debtors'] valuation of the Subject Property and found that the Debtor had some equity in the Collateral, priming would still be denied under section 364(d) because it is highly speculative whether the Project can be completed in the first instance"); *In re Swedeland*, 16 F.3d at 566 ) ("[C]ontinued construction based on projections and improvements to the property does not alone constitute adequate protection."); *In re Den-Mark Constr., Inc*., 406 B.R. 683, 702 (E.D.N.C. 2009) (vacating bankruptcy court's approval of the debtor's priming DIP loan due to lack of adequate protection of the secured creditor's interest given the small equity cushion and that "the enhancement of value is too speculative"); *In re Chevy Devco*, 78 B.R. 585, 589 (Bankr. C.D. Cal. 1987) (holding that existing mortgagee would not be protected if it was primed by a new construction loan and superpriority lien because the potential success of the renovation project is too speculative).

25. In *Swedeland*, the Court of Appeals concluded that the debtor's speculative projections of an increase in value of the property, which the debtor alleged would compensate the lender for the loss of its priority did not constitute adequate protection of the lender's interest in its collateral. 16 F.3d at 566. The

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

court stated that "Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for that erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects." *Id.* at 567.

26. Similarly, the Debtor's conclusory statement that Gerber is adequately protected by the potential preservation in value of its Collateral is mere speculation. The Debtor has provided no factual support for the projected cash flows in the Projected Budget or valuation evidence. The market and corresponding lack of demand for the Debtor's products is evidence of the unpredictable and volatile nature of the industry as a whole, and the Debtor in particular. Indeed, the Debtor has been experiencing financial difficulties over the past few years, citing the "attempted [] hostile takeover of the company in 2013," which impacted at least the Debtor's ability to raise operating capital. (See Strodden Declaration ¶ 6) Given the Debtor's difficulties in generating capital and profits, the nonexistence of an equity cushion, and the resulting risks to Gerber's position, the Cash Collateral Motion should be denied. *See In re Stoney Creek Techs., LLC*, 364 B.R. 882, 891-93 (Bankr. E.D. Pa. 2007) (finding that debtor failed to demonstrate that prepetition lender would be adequately protected under proposed postpetition financing, where the debtor had historically been unable to generate profits, there was no showing as to how the proposed loan would change such circumstances). Unfortunately, conversion appears inevitable.

## IV. THE PROPOSED BUDGET FAILS TO PROVIDE SUFFICIENT INFORMATION

27. Further, the Cash Collateral Motion should be denied because the Debtor's Proposed Budget fails to provide information necessary for the Court and parties in interest to evaluate the necessity of the proposed payments set forth therein and further provides for payment to insiders without the any scrutiny whatsoever.

28. Among other issues, the Proposed Budget is deficient for the following reasons:

(a) the Proposed Budget projects $1.8MM in purchase orders, yet the Debtor has failed to provide evidence of such orders. Moreover, the Proposed Budget is unclear as to how the Costco purchase order is reconciled.

(b) the Proposed Budget projects sales discounts at 9.3% when, historically, such discounts have been no more than 6%;

(c) the net cash after expenses is nominal (at $5,507);

(d) the Proposed Budget fails to include any details with respect to payroll and benefits, and should instead include detailed payroll and benefit information for all positions (and forbid payments to any insiders, including Guarantors);

(e) the Proposed Budget fails to include the assumptions which support the amounts set forth therein;

(f) the Debtor fails to include any information regarding how expenses under the Proposed Budget compare to the Debtor's pre-Petition Date expenses and fails to include any information regarding whether the disbursements are on account of pre-petition claims;

(g) the Proposed Budget requests authority to use Cash Collateral for plainly improper or otherwise opaque purposes, including (i) "meals and entertainment," (ii) "travel," (iii) "3PL Fees", (iv) "outside services," and (v) "demo expenses"; and

(h) the Proposed Budget fails to specify any amounts for disbursements to retained professions (including Debtor's counsel).

29. Furthermore, in the event the Court authorizes use of the Cash Collateral, any use should be limited to only those expenses that are proved at the hearing to be necessary to avoid "immediate and irreparable harm." When interim relief is sought, as is the case here, "the Court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

to the estate pending a final hearing." See Fed. R. Bankr. P. 4001(b)(2). Because the Proposed Budget is inadequate, it is unclear whether the expenses set forth therein are necessary to avoid "immediate and irreparable harm."

## V. GERBER PROPOSAL FOR ADEQUATE PROTECTION

As set forth above, Gerber believes that the use of Cash Collateral being sought by the Debtor will cause Gerber to face a material risk that the Collateral and interest will face significant diminution and that the proposed adequate protection being proffered by the Debtor is illusory and of speculative value. In an effort to be constructive, Gerber would consent to the use of its Cash Collateral if the following conditions and protections are provided to it:

- **Section 363 Sale**: The Debtor must immediately begin a sale process pursuant to Section 363 of the Bankruptcy Code, with bidding procedures and a possible stalking horse bidder, so as to close such sale on or before December 31, 2016.

- **Approval of Proposed Budget**: The Debtor must immediately correct and seek approval of an amended budget that incorporates adequately addresses each of Gerber's concerns and provides evidence of the underlying assumptions.

- **Actual Adequate Protection Lien and Superpriority Claim**: Gerber believes that rather than being provided with illusory replacement liens, the Debtor should pledge a lien and security interest on all Chapter 5 avoidance actions. The Debtor shall also grant and assign to Gerber valid, perfected and enforceable liens and security interests (the "Replacement Liens") in all of the Debtor's right, title and interest in, to and under property of the same type as the Collateral acquired by the Debtor post-petition (collectively, the "Replacement Collateral"), to the extent of any reduction or diminution in the value of the Collateral. The Replacement Liens shall be deemed valid, perfected and enforceable against the Replacement Collateral as of the Petition Date without further filing or recording under applicable law, shall have the same priority as Gerber's security interest in and lien on the Collateral of the same type, and shall not be subject to dispute, avoidance or subordination. The Replacement Liens shall be retroactive to the Petition Date and shall be valid and enforceable

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2

against any trustee appointed in the Debtor's Chapter 11 case, or in any subsequent proceeding affecting the Debtor, including any conversion of this case to a case under Chapter 7 of the Bankruptcy Code. To the extent that the adequate protection to which Gerber is entitled proves to be inadequate, and the value of its interest in the Collateral continues to decline, any claim arising therefrom shall be an administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code.

- **Adequate Protection Payment**: To adequately protect Gerber's interests in its Collateral, along with the Debtor's use of Cash Collateral, Gerber believes that it should receive an adequate protection payment of $180,000, which represents 50% of the account receivable being held by Costco. Moreover, the Debtor shall pay Gerber's counsel's fees upon three days' notice.

- **Compliance with Secured Financing Documents**: Gerber also believes the Debtor should continue to comply with certain protective provisions of the Secured Financing Documents including the maintenance of insurance and financial reporting requirements.

## RESERVATION OF RIGHTS

30. This pleading is intended to serve as an objection to the interim relief sought in the Cash Collateral Motion. Gerber reserves all rights to file additional pleadings in the event there is a hearing for final relief and/or with respect to the Collateral, including without limitation, the Cash Collateral, and the Debtor's continued use thereof, including, without limitation, motions seeking relief from the automatic stay, to dismiss or convert this case and/or for adequate protection.

///

///

///

///

///

///

///

## **CONCLUSION**

WHEREFORE, Gerber respectfully requests that this Court deny the use of Gerber's Cash Collateral absent the furnishing of adequate protection and grant such further relief as justice and equity require.

Dated: December 5, 2016

VEDDER PRICE (CA), LLP

By: s/ Scott H. Olson
    Scott H. Olson

Attorneys for Creditor
GERBER FINANCE INC.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -

GERBER FINANCE INC.'S OBJECTION TO
USE OF ITS CASH COLLATERAL

SAN_FRANCISCO/#40632.2