Daniel J. Weintraub - Bar #132111
James R. Selth - Bar #123420
Elaine V. Nguyen - Bar #256432
WEINTRAUB & SELTH, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: elaine@wsrlaw.net

Attorneys for Debtor and Debtor-in-Possession,
COMPLETION 123, INC. fka ESSENTIAL LIVING FOODS, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>COMPLETION 123, INC. fka ESSENTIAL LIVING FOODS, INC.<br><br>Debtor and Debtor in Possession. | Case No. 2:16-bk-25844-RK<br><br>Chapter 11 Case<br><br>**CHAPTER 11 LIQUIDATING PLAN OF COMPLETION 123, INC. fka ESSENTIAL LIVING FOODS, INC.**<br><br>**<u>Disclosure Statement Hearing:</u>**<br>Date:    July 26, 2017<br>Time:    11:00 a.m.<br> Place:  Courtroom 1675<br>              255 E. Temple St.<br>              Los Angeles, CA 90012<br><br>**<u>Plan Confirmation Hearing:</u>**<br>Date:     To Be Set<br>Time:    To Be Set<br> Place:  Courtroom 1675<br>              255 E. Temple St.<br>              Los Angeles, CA 90012 |

1

# I. INTRODUCTION

Completion 123, Inc., fka Essential Living Foods, Inc., a Florida corporation, is the debtor and debtor in possession ("Debtor"), in the above-captioned chapter 11 bankruptcy case ("Case").  On December 1, 2016 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  Chapter 11 allows the Debtor, the creditors and other parties in interest to propose a Chapter 11 Plan.  A Chapter 11 Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.

The Debtor is the party proposing the Chapter 11 Liquidating ("Plan") sent to you in the same envelope as this document is the Debtor's Disclosure Statement ("Disclosure Statement").

This is a liquidating Plan.  On January 11, 2017, the Court entered its order [Docket #76] approving the sale ("Sale") of substantially all assets of the Debtor to Terraholdings, LLC, or its designee [Docket # 76] ("Buyer").  The sale closed on January 13, 2017 and the remaining proceeds from the sale are currently in Debtor's counsel, Weintraub & Selth, APC's attorney-client trust account.  After having made payments to secured creditors as authorized by the Court, quarterly payments to the US Trustee, name change fees, ongoing directors and officer's insurance policy premium payments and payment of administrative claims of the estate's general counsel and financial advisor, in amounts approved by the Court, there is currently $68,793.31 cash ("Cash on Hand") in the estate.

Under the Plan, the Debtor will distribute the Cash on Hand to administrative, priority and general unsecured creditors in accordance with the terms of the Plan.  The Debtor is also currently seeking separate counsel to work on a contingency basis to analyze, and if appropriate, pursue preference and other avoiding power claims under Chapter 5 of the Bankruptcy Code for the benefit of the estate ("Avoidance Actions").  At this point, there is no guarantee such counsel

can be retained or will succeed in recovering additional cash for the estate.  Attached to the

Disclosure Statement as **Exhibit A** is a copy of the Debtor's response to Question 3 on the

Statement of Financial Affairs which lists the potential Avoidance Actions, as well as an excel

spreadsheet of the Debtor's general ledger showing all disbursements made in the year prior to

bankruptcy to the Petition Date.

There are two classes of creditor claims in the Plan:

1. **Class 1 Convenience Claims**:  Class 1 consists of all Convenience Claims against

    the Debtor.  A "Convenience Claim" means any Claim against the Debtor that would

    otherwise be a Class 2 General Unsecured Claim, but for the fact that the Claim is

    allowed in an amount that is greater than $0.00 and less than or equal to $2,500.00, **or**

    **for which the creditor _elects_ (pursuant to the appropriate election on the Ballot**

    **or other written instrument submitted and satisfactory to the Plan Proponent) to**

    **_reduce_ its allowed claim amount to $2,500.00.**

    Class 1 claimants will be paid up to fifty percent (50%) of their allowed claims on the

    tenth (10th) day following the allowance and payment of administrative and priority

    claims from the Cash on Hand.  The deadline to file a Proof of Claim in this

    Bankruptcy Case is July 17, 2017 ("Bar Date").  In the unlikely event the total

    aggregate amount of Class 1 Convenience Claims exceeds the available Cash on

    Hand, Class 1 Convenience Claims will be paid pro-rata from the available Cash on

    Hand after payment of priority and administrative claims.  **Exhibit B** shows all claims

    known to Debtor which on their face value fall within Class 1 as of June 2, 2017.

2. **Class 2 General Unsecured Claims:**  Class 2 consists of all claims that are not an

    administrative claim, priority claim, secured claim, or a Class 1 Convenience Claim.

    Class 2 General Unsecured Claims will receive a pro rata distribution from (1) all

remaining Cash on Hand, after payment of administrative, priority, Class 1 Convenience Claims and a plan reserve of $5,000.00 (the "Pro Rata Class 2 Cash Payment"), and (2) the gross proceeds received from the recovery in any Avoidance Actions, net of any attorneys' fees and costs associated with generating the recovery in the Avoidance Actions (the "Class 2 Avoidance Action Payment").   The Pro Rata Class 2 Cash Payment shall be made on or before the tenth (10th) day following the final resolution of any objections to claim objection or other litigation filed by or against the Debtor, while the Class 2 Avoidance Action Payment shall be made within thirty (30) days following the final resolution of all Avoidance Actions.

Exhibit C shows all claims known to Debtor which on their face value fall within Class 2 as of June 2, 2017.  Again, the claims Bar Date is July 17, 2017.

The Plan provides an extremely prompt and cost effective means for distributing the Cash on Hand and any recovery from the Avoidance Actions.

The alternative to the Plan is conversion of the case to Chapter 7.  Conversion will result in significant delay in creditor distributions (perhaps a year or more) **and increased administrative fees** (the Chapter 7 trustee's fee alone is approximately ($12,765.08, plus the fees and expenses of the trustee's counsel and other professionals-estimated at $15,000.00), which would diminish the return to unsecured creditors.  _See_ Article V.B Liquidation Analysis.

The "Effective Date" is the first business day which is at least fifteen (15) days following the date of entry of the Bankruptcy Court order confirming the Plan ("Plan Confirmation Order"), providing there has been no order entered staying the effectiveness of the Plan Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date will be on the first business day after the stay is no longer in effect with respect

to the Plan Confirmation Order.  Following the Effective Date, the Debtor will be referred to

herein as the Reorganized Debtor.

## II.

## SUMMARY OF THE PLAN

As of June 2, 2017, Debtor's counsel is currently holding $68,793.31 of Cash on Hand

which shall be distributed under the Plan, along with any recovery for the estate from the

Avoidance Actions in order of priority set forth below.   If the unsecured creditors do not vote in

favor of the Plan, this case will be converted to one under Chapter 7 which will result in increased

claims in Chapter 7 trustee fees and administrative fees.

## III.

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND INTERESTS UNDER THE PLAN

**A.    What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various

classes according to their right to priority.  The Plan states whether each class of claims or interests

is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.

They are not considered impaired and they do not vote on the Plan because they are automatically

entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has

not placed the following claims in a class:

**1.    Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Case that

are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all

administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| NAME | AMOUNT OWED[1] | TREATMENT |
|---|---|---|
| Clerk's Office Fees | $0 (Estimate) | Paid in full on the Effective Date by the Reorganized Debtor |
| Office of the U.S. Trustee Fees | $325.00 per Quarter (Estimate) | Paid in full on the Effective Date and every quarter thereafter until the entry of a Final Decree closing the case. |
| Weintraub & Selth, APC ("<u>WS</u>") General Bankruptcy Counsel | $15,000 in additional fees through plan confirmation. With the exception of claim objections or other litigation, none of which is currently contemplated, WS agrees to waive fees and costs in excess of $15,000 which accrue through Plan confirmation. | Paid in full the later of the Effective Date or the date of an Order approving an interim or final fee application |
| Hiramatsu & Associates, Inc. Debtor's Financial Consultant | $10,966.00 in addition to the pre-petition retainer made by the Debtor. | Paid in full the later of the Effective Date or the date of an Order approving an interim or final fee application |
| Total | $26,291.00 | |

<u>Court Approval of Fees Required</u>:

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses except fees owing to the Clerk of the Court and fees owing to the Office of the United States Trustee (the "<u>OUST</u>"), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application, unless payment of such fees and expenses has previously been approved by this Court

---

[1] The amounts set forth in this chart are estimates of the administrative claim amounts that the Debtor believes each administrative claimant will be entitled to on the Effective Date.

pursuant to 11 U.S.C. § 328(a).  Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan.[2]  The administrative claim amounts set forth above for professional fees and expenses simply represent the Debtor's best estimate as to the amount of allowed administrative claims for professional fees and expenses in this case, making the assumption that the Debtor makes all of the post-petition professional fee monthly payments that the Debtor is authorized to make.  The actual administrative claims for professional fees and expenses may be higher or lower.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims for professional fees and expenses, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims for professional fees and expenses.  Also, the professionals employed in this case may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in excess of the post-petition professional fee monthly payments received by such professionals.  To the extent any such interim fees and expenses are allowed by the Bankruptcy Court and paid by the Debtor prior to the Effective Date, that will reduce the amount of professional fees and expenses to be paid by the Reorganized Debtor.

**The last day to file Chapter 11 administrative claims (except for ordinary post-petition operating obligations and professional fees and expenses) is thirty (30) days after the Effective Date. Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a non-appealable order allowing the administrative expense, unless the administrative claimant has consented otherwise in writing.**

---

[2] On May 11, 2017, the court entered its *Order Granting Application For Interim Fees and/or Expenses,* allowing fees and costs to WS in the amount of $113,458.05.

**2.        Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8).  The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in regular installments of cash over a period not exceeding five (5) years from the date of the order for relief.   The following chart lists all of Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan.

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| Internal Revenue Service (Proof of Claim #4) | $100.00 | Payment in full on the Effective Date |
| Franchise Tax Board (Proof of Claim #18) | $813.25 | Payment in full on the Effective Date |
| Total | $913.25 | |

**C.        Classified Claims and Interests**

**1.        Class of Secured Claims**

Secured claims are claims secured by liens on property of the estate.   Secured claimants were paid through the Sale.  Thus, there are no secured claims in this Chapter 11 Case.

**2.              Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.   The Debtor is not aware of any claims that

would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

**3.        Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).    The following chart identifies the Plan's treatment of the classes containing all of the Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Claims: Convenience Claims Class 1 consists of all Convenience Claims against the Debtor.  A "Convenience Claim" means any Claim against the Debtor that would otherwise be a Class 2 General Unsecured Claim, but for the fact that the Claim is allowed in an amount that is greater than $0.00 and less than or equal to $2,500.00, **or for which the creditor _elects_ (pursuant to the appropriate election on the Ballot or other written instrument submitted and satisfactory to the Plan Proponent) to _reduce_ its allowed claim amount to $2,500.00.**  Amount of all claims: To Be Determined[3] | N | Y  Allowed claims in this class are entitled to vote on the Plan | Class 1 claimants will be paid up to fifty percent (50%) of their allowed claims on the tenth (10th) day following the allowance and payment of administrative and priority claims from the remaining Cash on Hand.    In the unlikely event the total aggregate amount of Class 1 Convenience Claims exceeds the available Cash on Hand, Class 1 Convenience Claims will be paid pro-rata from the available Cash on Hand after payment of priority and administrative claims. |

[3] The Debtor's Schedule F and the Proofs of Claims filed in this case through June 2, 2017, show a total of 59 claims equal to or less than $2,500.00 for a total Convenience Claim pool of $43,180.05. The total number and amount of Class 1 Convenience Claims will not be known until the claims Bar Date passes and Plan ballots which allow creditors to waiver claims down to inclusion in Class 1 are received.  _See_ **Exhibit B.**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
|  | *See* **Exhibit B.** |  |  |  |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 2 | Claims: General Unsecured Claims Class 2 consists of all claims that are not an administrative claim, priority claim, secured claim, or a Class 1 Convenience Claim. Amount of all claims: To Be Determined[4] *See* **Exhibit C** | N | Y Allowed claims in this class are entitled to vote on the Plan | Class 2 General Unsecured Claims will receive a pro rata distribution from (1) all remaining Cash on Hand, after payment of administrative, priority, Class 1 Convenience Claims and a plan reserve of $5,000.00 (the "Pro Rata Class 2 Cash Payment"), and (2) the gross proceeds received from the recovery in any Avoidance Actions, net of any attorneys' fees and costs associated with generating the recovery in the Avoidance Actions (the "Class 2 Avoidance Action Payment"). The Pro Rata Class 2 Cash Payment shall be made on or before the tenth (10th) day following the final resolution of any objections to claim objection or other litigation filed by or against the Debtor, while the Class 2 Avoidance Action Payment shall be made within thirty (30) days following the |

---

[4] The Debtor's Schedule F and the Proofs of Claims filed in this case through June 2, 2017, show a total of 112 claims equal to or greater than $2,500.00 for a total Class 2 Claim pool of $6,349,904.85. The total number and amount of Class 2 Claims will not be known until the claims Bar Date passes and Plan ballots which allow creditors to waiver claims down to inclusion in Class 1 are received. *See* **Exhibit C.**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
|         |             |               |                | final resolution of all Avoidance Actions. |

4.        **Class of Interest Holders**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 3 | Equity Interest in Debtor — <br><br> Beon Holdings, Inc. (100%) | Y | Y | On the Effective Date, the equity interest in the Debtor, which is currently owned 100% by Beon Holdings, LLC will be cancelled and extinguished. |

D.        **Means of Effectuating the Plan**

1.        **Funding for the Plan and Post Confirmation Management**

The Plan will be funded by the following:

-        **Cash on Hand**: As of June 2, 2017, Debtor's counsel is currently holding $68,793.31 to distribute under the Plan.

-        **Avoidance Actions**:  Attached hereto as **Exhibit A** is a copy of the Debtor's response to Question 3 on the Statement of Financial Affairs which lists the potential Avoidance Actions, as well as a report from Debtor's accounting software showing all disbursements made during the 90 days preceding the Petition Date and in the year prior to bankruptcy with respect to payments to insiders.  The Debtor is currently seeking separate counsel to work on a contingency basis to analyze, and if

appropriate, pursue the Avoidance Actions for the benefit of the estate.  At this point, there is no guarantee such counsel can be retained or will succeed in recovering additional cash for the estate

### 2.  Disbursing Agent

In the interest of minimizing expense to the estate, Weintraub & Selth, APC, the Debtor's counsel, shall serve without bond, as the Plan Disbursing Agent ("Disbursing Agent") under the Plan and make Plan disbursements pursuant to the calculations of the pro rata share for each general unsecured claimant made by Debtor's management for no fee other than postage costs. The cost of postage is estimated to be less than $1,000.00.

### 3.      Objections to Claims

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims. The Debtor shall file any claim objections by October 15, 2017, which is ninety (90) days after the Claim Bar Date.

Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtor after the Bar Date of **July 17, 2017** will be deemed invalid unless the claimant files a motion for leave of Court to file such claim.  With respect to disputed claims which are not resolved prior to the Effective Date, the Reorganized Debtor shall have the authority, in its sole discretion, in the reasonable exercise of its business judgment and subject to the approval of the Bankruptcy Court, to settle or compromise any claim.

As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  The Court will

retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the Plan.

Nothing contained in the Plan will constitute a waiver or release by the Debtor of any rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The Disbursing Agent will withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any particular class as if such claims were allowed in full.

**4.          Interest Pending Allowance of Claims**

Except as specifically provided for in the Plan, in the order confirming the Plan, or in some other order of the Court, interest will not accrue on claims and no holder of a claim will be entitled to interest accruing on or after the Petition Date on any claim.

To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein will be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the Plan.

**5.          Distributions to be Made Pursuant to the Plan**

Distributions to be made by the Disbursing Agent on account of any claim will be made in accordance with the Plan and as promptly as practicable. Distributions to be made by the Disbursing Agent under the Plan will be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage

prepaid, to the address shown in the schedules of liabilities filed by the Debtor with the Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check will be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of one hundred twenty (120) days from the date of issuance of such check.  After such date, the claim will be deemed disallowed and the monies otherwise payable on account of such claim will revest in the Reorganized Debtor free and clear of all claims and interests unless such amount of all voided checks exceeds $10,000.00, in which case all funds from voided checks shall be paid on a pro rata basis to allow Class 2 claim holders.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan will be subject to any such withholding or reporting requirements.

## 6.    Exculpations and Releases

To the maximum extent permitted by law, none of the Debtor, the estate, the Disbursing Agent, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan

and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

### 7.    Injunctions

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the estate, or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### 8.    Investigation and Prosecution of Claims and Causes of Action Including Avoidance Actions

The Debtor or the Reorganized Debtor, as the case may be, shall investigate all claims and causes of actions, including causes of action under Sections 544, 546, 547, 548, 550, 551 and 552 of the Bankruptcy Code (the "Avoidance Actions") of the Debtor and this estate and determine which, if any, should be prosecuted.  All such claims and causes of action of the Debtor and its

estate are preserved by the Plan.  The, Debtor and the Reorganized Debtor shall have the full power and authority, without further order of the Court, to file, prosecute, settle, adjust, retain, enforce or abandon any such claim or cause of action as the representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, whether such claims and causes of action were commenced by the Debtor prior to the Effective Date or by the Reorganized Debtor after the Effective Date, and engage and compensate counsel in connection with such Avoidance Actions , provided however that the Bankruptcy Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, this case and this estate to resolve and to adjudicate any and all such claims and causes of action following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights or of any defenses the Debtor or the Reorganized Debtor may have with respect to any such claims and causes of action.

**E.**    **Risk Factors**

The primary risk of implementing the Plan is that creditors will vote against the Plan. If creditors reject the Plan, the case will likely be converted to one under Chapter 7.  **If the case is converted, there will be significant delays and additional costs before creditors receive a distribution of the funds currently available.  Conversion to Chapter 7 could result in Class 1 and Class 2 claim holders receiving no distribution.**

**F.**    **Other Provisions of the Plan**

**1.**    **Executory Contracts and Unexpired Leases**

The Debtor is not assuming any executory contracts or unexpired leases.

All executory contracts and unexpired leases shall be deemed rejected.  The Confirmation Order, subject to the occurrence of the Effective Date, will constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases. **THE BAR DATE FOR**

**FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER.** Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**2.      Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.      To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

c.      To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

d.      To authorize the sale of real property and order reconveyances of liens and deeds of trusts dealt with in the Plan;

e.      To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

f.      To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

g.      To determine any request for payment of administrative expenses;

h.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

i.      To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

j.      To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

k.      Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

l.      To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

m.      To enter a final decree closing this Case.

**G.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

As this is a Liquidating Plan, the Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability. The Debtor makes no representations regarding the potential tax consequences to creditors.

## IV.

## EFFECT OF CONFIRMATION OF PLAN

**A.      Discharge**

As this is a liquidating Plan, the Debtor will not receive a discharge under the Plan.

**B.      Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor. In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor.

**C.      Modification of Plan**

The Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

Within one hundred twenty (120) days of the entry of the order confirming the Plan, the Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice after the Effective Date. Further status reports shall be filed every 120 days and served on the same entities.

**E.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7. The Reorganized Debtor shall move the Court for entry of a final decree immediately after making the final distributions under the Plan.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under § 1112(b) after the Plan is confirmed if there is a default in performing the Plan. If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that the Court did not previously authorize relief from stay during the Case. The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.    Final Decree**

Once the estate has been fully administered as referred to in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor or other party as the Court shall designate in the order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the Case.

**H.    Conclusion**

If the Plan is not confirmed, unsecured creditors will likely receive nothing in respect of their claims because the case will be converted to one under Chapter 7 and the Chapter 7 and Chapter 11 administrative claim and the additional costs of administration will consume the funds currently available and there are no other assets from which distributions to creditors can be made. Accordingly, the Debtor believes confirmation of the Plan is clearly in the best interests of creditors and recommends that creditors vote in favor of the Plan.

Dated: June 5 , 2017                              COMPLETION 123, INC. fka
                                                  ESSENTIAL LIVING FOODS, INC.

                                                  By:  Kipp Stroden, CEO

Presented By:

      WEINTRAUB & SELTH, APC

By:     /s/ Elaine V. Nguyen
        Daniel J. Weintraub
        James R. Selth
        Elaine V. Nguyen
        Attorneys for Debtor and Debtor-in-Possession,
        COMPLETION 123, INC. fka ESSENTIAL LIVING FOODS, INC.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Ste. 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 11 LIQUIDATING PLAN OF COMPLETION 123, INC. fka ESSENTIAL LIVING FOODS, INC.,** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 5, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Martin J Brill**   mjb@lnbrb.com
- **Alan W Forsley**   alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- **Amir Gamliel**   agamliel@perkinscoie.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Kenneth G Lau**   kenneth.g.lau@usdoj.gov, dare.law@usdoj.gov,Melanie.scott@usdoj.gov,hatty.yip@usdoj.gov
- **Byron B Mauss**   efilings@amlegalgroup.com
- **Elaine Nguyen**   elaine@wsrlaw.net, melissa@wsrlaw.net;vinnet@ecf.inforuptcy.com;elayna@wsrlaw.net
- **Juliet Y Oh**   jyo@lnbrb.com, jyo@lnbrb.com
- **Scott H Olson**   solson@vedderprice.com, ecfdocket@vedderprice.com,jcano@vedderprice.com,jparker@vedderprice.com
- **James R Selth**   jim@wsrlaw.net, jselth@yahoo.com;melissa@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Eric E Walker**   ewalker@perkinscoie.com, eric-walker-5530@ecf.pacerpro.com
- **Daniel J Weintraub**   dan@wsrlaw.net, melissa@wsrlaw.net;vinnet@ecf.inforuptcy.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **June 5, 2017,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 5, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Personal delivery to Chambers of Hon. Robert N. Kwan, United States Bankruptcy Court, Los Angeles Division**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/05/2017 | Elayna Fenelon | /s/ Elayna Fenelon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**